# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WISCONSIN

---

STEPHEN M. KLATT,

      Petitioner,

      v.                             Case No. 08-C-459

BRADLEY HOMPE
Warden, Stanley Correctional
Institution,

      Respondent.

---

# DECISION AND ORDER

---

      On May 23, 2008, the petitioner Stephen M. Klatt filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petitioner was convicted of repeated sexual assault of the same child and was sentenced to a ten-year prison term, to be followed by five years of extended supervision. The sentence was imposed on September 21, 2006, after the petitioner entered an Alford[1] plea to the charges.

      The petitioner challenges the judgment of his conviction, which was affirmed by the Wisconsin Court of Appeals on December 27, 2007, on the following grounds: 1) his taped telephone conversation with his daughter and his recorded conversation with Detective Darren Laskowski should have been suppressed; 2) he entered his Alford plea unknowingly, involuntarily, and unintelligently; and 3) his sentence was unduly harsh.

---

[1]    North Carolina v. Alford, 400 U.S. 25 (1970).

The court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the matter arises under federal statutes. Venue is proper under 28 U.S.C. § 1391. The case was assigned according to the random assignment of civil cases pursuant to 28 U.S.C. § 636(b)(1)(B) and General Local Rule 72.1 (E.D. Wis.). The parties have consented to United States magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and General Local Rule 73.1 (E.D. Wis.).

This court conducted a preliminary examination of the petition in accordance with Rule 4 of the Rules Governing § 2254 cases. By order filed June 16, 2008, this court determined that "it does not plainly appear from the 'face of the petition' that the petitioner is not entitled to relief." Thus, this court ordered the respondent, Warden Bradley Hompe of the Stanley Correctional Institution, to file an answer, motion or other response to the petition for a writ of habeas corpus. The respondent answered the petition. The parties subsequently briefed the petition for a writ of habeas corpus. Therefore, the petition is ready for disposition and will be addressed herein.

## APPLICABLE LAW

The habeas corpus statute was amended by the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996, which provides in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

-2-

28 U.S.C. § 2254(d). This provision entitles federal courts, acting within their jurisdiction, to interpret the law independently, but requires them to refrain from "fine tuning" state court interpretations. Lindh v. Murphy, 96 F.3d 856, 870-77 (7th Cir. 1996), rev'd on other grounds, 521 U.S. 320 (1997). "Thus, although this court reviews the state court's legal conclusions and mixed questions of law and fact de novo, that review is 'tempered by AEDPA's deferential constraints.'" Hereford v. McCaughtry, 101 F. Supp. 2d 742, 746 (E.D. Wis. 2000) (quoting Sanchez v. Gilmore, 189 F.3d 619, 623 [7th Cir. 1999]).

A state court's decision is "contrary to . . . clearly established Federal law as established by the United States Supreme Court" if it is "substantially different from relevant [Supreme Court] precedent." Washington v. Smith, 219 F.3d 620, 628 (7th Cir. 2000) (quoting Williams v. Taylor, 529 U.S. 362, 404-05 [2000]). The court of appeals for this circuit recognized the narrow application of the "contrary to" clause:

> under the "contrary to" clause of § 2254(d)(1), [a court] could grant a writ of habeas corpus . . . where the state court applied a rule that contradicts the governing law as expounded in Supreme Court cases or where the state court confronts facts materially indistinguishable from a Supreme Court case and nevertheless arrives at a different result.

Washington, 219 F.3d at 628. The court went on to explain that the "unreasonable application of" clause was broader and "allows a federal habeas court to grant habeas relief whenever the state court 'unreasonably applie[d] [a clearly established] principle to the facts of the prisoner's case.'" Id. (quoting Williams, 529 U.S. at 413).

To be unreasonable, a state court ruling must be more than simply "erroneous" and perhaps more than "clearly erroneous." Hennon v. Cooper, 109 F.3d 330, 334 (7th Cir. 1997). Under the "unreasonableness" standard, a state court's decision will stand "if it is one of several

-3-

equally plausible outcomes."  Hall v. Washington, 106 F.3d 742, 748-49 (7th Cir. 1997).  In

Morgan v. Krenke, the court explained that:

> [u]nreasonableness is judged by an objective standard and under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."

232 F.3d 562, 565-66 (7th Cir. 2000) (quoting Williams, 529 U.S. at 411).  Therefore, before a

court may issue a writ of habeas corpus, it must determine that the state court decision was both

incorrect and unreasonable.  Washington, 219 F.3d at 628.

## RELEVANT FACTUAL BACKGROUND

The facts of this case were set forth by the Wisconsin Court of Appeals in its decision:

> [The petitioner] was charged with repeatedly sexually assaulting his fourteen-year-old daughter on at least twenty occasions.  The evidence included a recorded telephone conversation between [the petitioner] and his daughter in which she indicated she might tell a school counselor about what they did and [the petitioner] responded that he would go to prison.  The evidence also included a tape-recorded conversation between [the petitioner] and investigator Darren Laskowski in which [the petitioner] denied that he touched his daughter except for incidental contact while wrestling with her, and he indicated his daughter touched him "all over his body" while he was sleeping.  After the court denied [the petitioner's] motions to suppress the tapes and his statement to Laskowski, [the petitioner] agreed to enter an **Alford** plea to the charge of repeated sexual assault of a child and the State dismissed an incest charge.

(Petitioner's Brief, Exh. D at 2).   After discussing the matter with his attorney, the petitioner

affirmed that he wanted to enter an Alford plea to the violation of Wis. Stat. § 948.025(1)(b).  At

that time, the petitioner stated that he was aware that an Alford plea amounted to a guilty plea

combined with a claim of innocence.  The State recommended a sentence of one year in prison

and six years of probation.  However, on September 21, 2006, Oconto County Judge Michael

-4-

Judge sentenced the petitioner to ten years in prison followed by five years' extended supervision.

The petitioner appealed his sentence and conviction to the Wisconsin Court of Appeals. The petitioner's counsel filed a no-merit brief on the petitioner's behalf, pursuant to Anders v. State of California, 386 U.S. 738 (1967). The petitioner also filed a supplementary response. The Wisconsin Court of Appeals affirmed the petitioner's conviction and sentence. The court held that the petitioner provided no basis for suppressing the taped telephone conversation with his daughter or the recorded statement he made to Detective Laskowski. The court referenced Wis. Stat. § 968.31(2)(b) which allows a person acting under the color of law to intercept a wire communication where one of the parties to the communication has given consent. The court concluded that Detective Laskowski's involvement in arranging the recordings satisfied the requirement that the recording was obtained under the color of law. In addition, the petitioner's daughter and her mother both gave oral consent to record the call. The court further determined that the petitioner's Miranda[2] rights were not implicated with respect to either recording because he was not in custody for either conversation, citing Rhode Island v. Innis, 446 U.S. 291, 300-01 (1980).

The court of appeals also concluded that "the record discloses no arguable basis for [the petitioner] to withdraw his *Alford* plea." (Answer, Exh. C at 3-4). The court cited State v. Bangert, 131 Wis. 2d 246, 257, 389 N.W.2d 12, 19 (Wis. 1986) and State v. Hampton, 274 Wis. 2d 379, 683 N.W.2d 14 (Wis. App. 2004). The court noted that Judge Michael Judge specifically clarified that he was not bound by the plea agreement and that he could sentence the petitioner

---

[2] Miranda v. Arizona, 384 U.S. 436, 467-72 (1966).

-5-

to the maximum prison term.  Thus, the court concluded that the petitioner entered his Alford plea knowingly, voluntarily, and intelligently.

With respect to the petitioner's assertion that his sentence was unduly harsh, the court of appeals concluded there was nothing in the record to challenge the court's sentencing discretion.  Thus, the court upheld the petitioner's sentence, concluding that the sentencing objectives of the trial court were valid criteria and noting that the petitioner did not accept responsibility or show remorse for his crime until the date of his sentencing.

The petitioner filed a pro se petition for review.  The Wisconsin Supreme Court denied review on March 18, 2008.

## ANALYSIS

The petitioner asserts that the trial court's failure to suppress his recorded conversation with his daughter and the recorded statement to Detective Laskowski violated federal law, United States Supreme Court precedent, and his Fourth, Fifth, Sixth, and Fourteenth Amendment rights under the United States Constitution.  The petitioner asserts that the federal statute that governs electronic communication interceptions, 18 U.S.C.A. §§ 2510-2520, applies to the recorded conversation with his daughter and, thus, court authorization was necessary to record the conversation.  Title 18 U.S.C.A. § 2510(1) applies specifically to "interstate or foreign communications."  Thus, it does not apply to the petitioner's recorded conversations.

The petitioner further asserts that the statement recorded by Detective Laskowski at the bar should have been suppressed because it was taken in violation of his Miranda rights.  The petitioner maintains that he was in custody at the time of the conversation.  In Rhode Island v. Innis, 446 U.S. 291, 300-01 (1980), cited by the petitioner, the Supreme Court held that an individual is entitled to a Miranda warning when he is in custody and is subject to interrogation

-6-

or its functional equivalent. That case developed the law on the "functional equivalent" of interrogation.

In this case, however, the petitioner was not in custody when he was questioned by Detective Laskowski and, therefore, whether he was subject to interrogation or its functional equivalent is irrelevant. The petitioner was at his own bar when he was questioned by Detective Laskowski and was not under arrest. As the petitioner was not in custody, his <u>Miranda</u> rights were not implicated. Accordingly, the petitioner failed to demonstrate that the Wisconsin courts' decision concluding that he was not in custody and, thus, that his statement need not be suppressed, was contrary to, or an unreasonable application of, clearly established federal law.

The petitioner also contends that he did not enter his <u>Alford</u> plea voluntarily, knowingly and intelligently. In <u>Alford</u>, 400 U.S. at 31, the Supreme Court held that a guilty plea must be a "voluntary and intelligent choice among the alternative courses of action." <u>Id.</u> To determine if a plea is voluntary, a court will look to "all of the relevant circumstances surrounding" the plea. <u>Brady v. United States</u>, 397 U.S. 742, 749 (1970). As long as the defendant is not induced by threats or misrepresentations, and is made aware of the consequences, his plea is considered voluntary. <u>Id.</u> at 755.

Additionally, the defendant's plea must also be entered knowingly and intelligently. <u>Alford</u>, 400 U.S. at 31; <u>Boykin v. Alabama</u>, 395 U.S. 238, 242 (1969). While the defendant "need not be made aware of every possible consequence" of his plea, <u>St. Pierre v. Walls</u>, 297 F.3d 617, 634 (7th Cir. 2002), he must be aware of the "relevant circumstances and likely consequences." <u>Brady</u>, 397 U.S. at 748. Finally, for a plea to be knowing, the defendant must "possess an understanding of the law in relation to the facts." <u>McCarthy v. United States</u>, 394 U.S. 459, 466 (1969).

-7-

The petitioner asserts that he is not intelligent enough to make a voluntary plea. To support this contention, the petitioner cites to his IQ of 68 and his low verbal skills. Additionally, he quotes Dr. Gerald Wellens, retired psychologist, who stated that the petitioner "does not have a profile that is similar to most incest offenders." (Petitioner's Brief, Exh. E at 2). However, the petitioner fails to mention that Dr. Wellens was suspicious of the Shipley Institute of Living Scale IQ test which resulted in the petitioner scoring an IQ of 68. Dr. Wellens gave the petitioner a Wechsler Abbreviated Scale of Intelligence test and found that the petitioner had a Verbal IQ of 76, a Performance IQ of 102, and a Full Scale IQ of 87. Moreover, the fact that the petitioner does not fit the typical profile of most incest offenders is irrelevant to his ability to enter an Alford plea.

The petitioner fails to cite any case law to support his assertion that his below-average IQ precluded him from entering an Alford plea. In fact, in Jersett v. Hompe, 2008 WL 2622858 *1, *2 (W.D. Wis. July 2, 2008), the court recently held that "the mere fact that petitioner is of borderline intelligence is insufficient to raise a bona fide doubt as to his competence to plead guilty." Subsequently, the court of appeals for this circuit held that a defendant with an IQ of 59 was competent enough to enter a guilty plea as long as the court engaged in a Rule 11 colloquy with the defendant, and the defendant affirmed that he was entering his plea knowingly and voluntarily. United State v. Moore, 2008 WL 5175676 *1, *1 (7th Cir. Dec. 11, 2008).

The petitioner concedes that he "thoroughly discussed the nature and consequences of the Alford/guilty plea" with his attorney. (Petitioner's Brief at 4). The petitioner informed the court that he understood that an Alford plea amounted to a guilty plea and that it would lead directly to a conviction. The petitioner stated that he nonetheless wished to enter an Alford plea. After the petitioner entered the plea, the court engaged him in a colloquy. The petitioner

affirmed that he was aware of the elements of the crime, the maximum penalty for his crime, the civil rights he would lose, and that the judge was not bound by the plea agreement. Finally, the petitioner's attorney stated that his client's plea was entered knowingly, freely, and intelligently.

Accordingly, based on the proceeding, the petitioner has failed to demonstrate that the Wisconsin Courts' decision that he entered his Alford plea voluntarily, knowingly and intelligently was contrary to, or an unreasonable application of, clearly established federal law.

Finally, the petitioner maintains that his Fourteenth Amendment due process rights were violated because his sentence was unduly harsh. Before he was sentenced, the prosecution recommended to the court that the petitioner receive six years of probation and a jail term of one year. Instead, Oconto County Judge Michael Judge sentenced the petitioner to ten years in prison followed by five years of extended supervision. The petitioner asserts that his Fourteenth Amendment rights were violated when the judge went beyond the prosecutor's sentencing recommendation.

The Fourteenth Amendment prohibits states from depriving "any person of life, liberty, or property, without due process of law" or from denying "any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Supreme Court has held that "[e]very person has a fundamental right to liberty in the sense that the Government may not punish him unless and until it proves his guilt beyond a reasonable doubt at a criminal trial conducted in accordance with the relevant constitutional guarantees." Chapman v. United States, 500 U.S. 453, 465 (1991). However, once a person is so convicted, a "court may impose, whatever punishment is authorized by statute for his offense, so long as that penalty is not cruel and unusual, . . . and so long as the penalty is not based on an arbitrary distinction that would violate the Due Process Clause of the Fifth Amendment." Id.

-9-

In support of his assertion that his sentence was unduly harsh, the petitioner cites Roberts v. Superintendent, Groveland Corr. Fac., 26 F. Supp. 2d 684 (S.D. N.Y. 1998), to demonstrate that "[a]n unduly harsh sentence may be a violation of due process." (Petitioner's Brief at 14). In fact, the court in Roberts actually held that the sentencing court was not bound by "an alleged off-the-record sentencing commitment." Roberts, 26 F. Supp. 2d at 686. Roberts is thus not applicable to the petitioner's claim.

The petitioner also asserts that Santobello v. New York, 404 U.S. 257 (1971), creates "a constitutional right to the enforcement of a negotiated plea agreement." (Petitioner's Reply Brief at 6). Santobello does no such thing. In Santobello, the Court held that the State of New York violated the defendant's due process rights after the prosecution failed to keep its promise not to recommend a sentence to the presiding judge. Santobello, 404 U.S. at 262. Santobello does not stand for the principle that a defendant is entitled to a prosecutor's recommended sentence. Rather, Santobello merely states that the prosecution may not renege on a promise not to recommend a sentence to a judge.

The petitioner was convicted under Wis. Stat. § 948.025(1)(b) for repeatedly sexually assaulting a child. The trial court made it clear to the petitioner during their colloquy that the maximum punishment he faced for his crime was 40 years in prison. The petitioner affirmed that he understood. The court sentenced the petitioner to ten years incarceration followed by five years on released supervision, well within the maximum punishment the petitioner faced. Thus, the sentence comports with the petitioner's due process rights. The petitioner has failed to demonstrate that the Wisconsin courts' decision is contrary to, or an unreasonable application of, clearly established federal law.

In sum, the decision of the Wisconsin courts was neither contrary to, nor involved an unreasonable application of, federal law as determined by the United States Supreme Court. Therefore, the petitioner's petition for a writ of habeas corpus is denied.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the petitioner's petition for a writ of habeas corpus be and hereby is **denied**.

**IT IS FURTHER ORDERED** that this action be and hereby is **dismissed**.

**IT IS ALSO ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 18th day of May, 2009.

BY THE COURT:


_____ s/ Patricia J. Gorence _____
PATRICIA J. GORENCE
United States Magistrate Judge